EVANGELINE F. GROSSMAN State Bar No.176014
egrossman@efglawyer.com
TONNA K. FAXON State Bar No. 237605
tfaxon@efglawyer.com
**EVANGELINE FISHER GROSSMAN LAW**
330 North Indian Hill Boulevard
Claremont, California 91711
Telephone: (909)626-1934
Facsimile: (909)626-1900

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL AND SUZANNE VAN GORDER,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST NATIONAL INSURANCE COMPANY OF AMERICA; and DOES 1 to 10, Inclusive;<br><br>Defendants. | Case No. 2:25-cv-01851-MAR<br><br>**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**1. BREACH OF CONTRACT**<br><br>**2. BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>Action Filed: March 4, 2025<br>Trial Date: None |

## I. NATURE OF THE CASE

1. Michael and Suzanne Van Gorder ("Plaintiffs") sustained substantial water damage to their home in Riverside, California, during the nighttime hours between October 21, 2023 and October 22, 2023.

2. First National Insurance Company of America ("Defendant"), failed to adjust the claim fairly and reasonably. Moreover, since the Plaintiffs have dutifully paid their insurance premiums while fulfilling the policy's requirements and

cooperating during the claim handling process, Defendant has received the benefits of the insurance contract premiums from the Plaintiffs while refusing to honor it. Plaintiffs, therefore, bring this civil action against Defendant for breach of contract, and breach of the implied covenant of good faith, and fair dealing.

## II. PARTIES

3. Plaintiffs owned and insured their home at all relevant times at 20849 Westbury Road, Riverside, California

4. Plaintiffs are informed, believe, and allege that Defendant is an insurance company incorporated under the laws of the State of New Hampshire and is authorized to transact business in and is transacting business in the State of California, with its principal place of business located in Portsmouth, New Hampshire 03801. Defendant's agent for service of process in California is Corporation Service Company, which will do Business in California as CSC—Lawyers Incorporating Service located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

5. The true names or capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 10, are unknown to Plaintiffs, who therefore designates those defendants by these fictitious names. Each of the defendants sued therefore as a DOE is legally responsible in some manner for the events and happenings referred to and proximately caused the injuries suffered by Plaintiffs. Plaintiffs will amend this complaint as necessary to allege DOE defendants' identities when the same becomes known to Plaintiffs.

6. Plaintiffs are informed, believe and allege that at all relevant times each of the Defendants was the agent and employee of each of the remaining defendants, and in their actions and inactions alleged were within the course and scope of such agency and employment.

/./.

/./.

## III. JURISDICTION AND VENUE

7. The Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because the Plaintiffs are not citizens of the same state as the Defendant and the amount in controversy exceeds $75,000. Venue in this Court is appropriate under 28 U.S.C. §1391(b)(1) and 1391(c)(2) because Defendant resides in, and is authorized to do business in, California. The policy at issue in this case was sold to Plaintiffs by Defendant in Los Angeles, California, issued and underwritten by Defendant in Los Angeles, California and Defendant is subject to the Court's personal jurisdiction with respect to the civil action in question.

## IV. FACTUAL BACKGROUND

8. Defendant's claims handling practices evidence a clear breach of the terms of the subject insurance policy and bad faith.

9. Plaintiffs purchased insurance and were insured under policy number OX5771389 (the "Policy") for comprehensive coverage for their home. A true and correct copy of the Policy within the Plaintiffs' possession is attached as **Exhibit A** and incorporated herein by reference.

10. On or about October 22, 2023, Plaintiffs' home sustained damage that caused a severe and widespread water loss to the interior of their home. When the sudden and accidental loss occurred, Plaintiffs were out of State for a memorial service. Their family friend who was caring for their dog discovered the loss caused a heavy and a constant flow of water coming from the garage, down the driveway, and out to the street. Water was also flowing under the front door.

11. The neighbor followed the sound of spewing water to the guest bathroom upstairs. There she saw that the water supply line to the toilet tank had broken at the neoprene wingnut that attached to the bottom of the tank. She called her husband to come and shut the water off. The bottom floor of the home was emerged in water. The water had seeped through the walls and ceiling from upstairs directly into the home office on first floor as well as the family room. The water had run for approximately

8-12 hours before being shut off and caused damage to both the upper and lower floors of the house.

12. Plaintiffs filed an insurance claim on October 23, 2023, with Defendant. The homeowners stayed in their house while 5 massive fans made excessive noise and it was exceptionally cold inside the home making it very difficult to sleep at night.

13. Plaintiffs were told by Defendant to find their own restoration company to come out and make necessary repairs, which they did. The repairs totaled $86,621.70. Defendant did not honor its policy. Mr. Van Gorder removed the lower floor tile himself, which took 9 days due to refusal from Defendant to perform the job. Plaintiffs did not stay in a hotel, which saved a sizable amount of money for Defendant. Plaintiffs lived in their extremely cold and drafty house for 6 months. The floors in the home were bare in the majority of the house. The drywall and ceilings were not repaired. Mr. Van Gorder has his photography studio upstairs in his house and could not use it due to the state of the home as it was embarrassing in front of the clients. Personal property was damaged and no reimbursement has been given. Plaintiffs' long wait between getting responses from Defendant, inadequate funds received, and Defendant's disregard for the safety and comfort of the insured homeowners is unacceptable. Plaintiffs are out-of-pocket for necessary repairs Defendant refused to pay.

14. Defendant has unreasonably delayed payment of policy benefits, which constitutes a breach of contract and is a breach of the implied covenant of good faith and fair dealing.

**FIRST CAUSE OF ACTION BREACH OF CONTRACT**

(Against Defendant and the DOE Defendants)

15. Plaintiffs refer to all preceding paragraphs and fully incorporate them in this cause of action.

16. At all material times herein, the Plaintiffs had a policy of insurance for their home through Safeco Insurance.

17. According to the contract's terms, Defendant agreed to provide coverage to Plaintiffs for loss or damage to their property arising out of a covered loss, such as Plaintiffs' Loss (as defined above). In the event of a covered loss, the Policy covers Dwelling Repairs, Personal Property, and Loss of Use.

18. The Policy covers accidental direct physical loss to the insured dwelling.

19. The Policy provides coverage for resulting loss from weather conditions.

20. Plaintiffs fulfilled all of their obligations under the contract. Plaintiffs paid the premiums and performed or substantially performed the promises they made under the contract, including promptly notifying Defendant of the loss. In the alternative, any obligation or requirement that they may have failed to fulfill was immaterial to Defendant's decision to enter into the contract and to its claims handling conduct.

21. Defendant breached its duties under the Policy by failing to provide the promised insurance coverage for the loss sustained by Plaintiffs. Plaintiffs have suffered damages as a direct and proximate result of its breach. In addition to being denied the policy's benefits after a loss, Plaintiffs were forced to retain counsel to obtain the Policy benefits owed by Defendant.

## SECOND CAUSE OF ACTION

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

(Against Defendant and the DOE Defendants)

22. Plaintiffs refer to all preceding paragraphs and incorporate them in full in this cause of action.

23. Defendant's claims handling practices are violative of the California Fair Claims Settlement Practices Regulations (10 CCR 2695.7) which states,

> (b) Upon receiving proof of claim, every insurer […] shall immediately, but in no event more than forty (40) calendar days later,

> accept or deny the claim, in whole or in part. The amounts accepted or denied shall be clearly documented in the claim file unless the claim has been denied in its entirety.
>
> (1) Where an insurer denies or rejects a first party claim, in whole or in part, it shall do so in writing and shall provide to the claimant a statement listing all bases for such rejection or denial and the factual and legal bases for each reason given for such rejection or denial which is then within the insurer's knowledge. Where an insurer's denial of a first party claim, in whole or in part, is based on a specific statute, applicable law or policy provision, condition or exclusion, the written denial shall include reference thereto and provide an explanation of the application of the statute, applicable law or provision, condition or exclusion to the claim. […]

24. This was never provided by Defendant. When more than 40 days is needed to accept or deny a claim, an insurer must let an insured know in writing within those 40 days and specify whether additional information is needed. This was not done in this claim.

25. Moreover, written status updates must be provided every 30 days until a claim determination is made. Nor was this satisfied by Defendant in this claim.

26. The California Fair Claims Settlement Practices Regulations further provides,

> (d) Every insurer shall conduct and diligently pursue a thorough, fair and objective investigation and shall not persist in seeking information not reasonably required for or material to the resolution of a claim dispute.

Yet, Defendant asked Plaintiffs to acquire multiple repair estimates despite them providing a repair estimate from a licensed contractor willing to do the work at the insureds' property early in the claim.

27. In every insurance policy there exists an implied duty of good faith and fair dealing that the insurance company will not do anything to injure the rights of the insured to receive the benefit of the Policy. Defendant breached its duty of good faith and fair dealing owed to Plaintiffs, including but not limited to, the following respects:

a. Unreasonably and in bad faith, placed its own financial interests ahead of its insured in violation of California's statutory, regulatory and common law;

b. Unreasonably and in bad faith failed to give at least as much consideration to the interests of its insured as it gave its own interests;

c. Unreasonably and in bad faith provided inaccurate, untruthful and misleading information to Plaintiffs;

d. Unreasonably and in bad faith failed to retain independent experts to assist in the fair, reasonable, objective and prompt investigation of the claim;

e. Unreasonably and in bad faith withheld payment of sums due and owing Plaintiffs;

f. Unreasonably and in bad faith failed to reasonably investigate and process Plaintiffs' claim for benefits;

g. Unreasonably and in bad faith failed to objectively investigate the claim;

h. Unreasonably and in bad faith failed to thoroughly investigate the claim;

i. Unreasonably and in bad faith ignored evidence supporting coverage;

j. Unreasonably and in bad faith failed to search diligently for evidence that supported payment of the claim;

k. Failing, refusing and neglecting to comply with Cal. Ins. Code § 2071, including in not providing all documents that relate to the evaluation of damages, including, but not limited to, repair and replacement estimates and bids, appraisals, scopes of loss, drawings, plans, reports, third-party findings on the amount of loss, covered damages, and cost of repairs, and all other valuation, measurement, and loss adjustment calculations of the amount of loss, covered damage, and cost of repairs, including all documents and communications;

l. Unreasonably and in bad faith compelled Plaintiffs to institute litigation to recover amounts due under the insurance Policy.

28. Plaintiffs are informed, believe and allege that Defendant committed institutional bad faith by other acts and omissions of which they are presently unaware but will be shown according to proof at trial.

29. Defendant's conduct was undertaken or approved by its officers or managing agents, who are and were responsible for claims supervision, operations, communications, and decisions. This unreasonable conduct was undertaken on behalf of Defendant.

30. Defendant had advance knowledge of the actions and conduct of said individuals and the conduct was ratified, authorized and approved by the insurer, including managing agents whose precise identities are unknown to Plaintiffs at this time and therefore identified and designated as Does 1 through 10.

31. As a further proximate result of Defendant's unreasonable conduct Plaintiffs were compelled to retain legal counsel to obtain the benefits due under the policy, and is liable to Plaintiffs for attorney fees, witness fees and costs of litigation reasonably necessary and incurred by him to obtain the Policy's benefits.

32. Defendant intended for its conduct to cause injury to Plaintiffs. Defendant engaged in despicable conduct carried out with a willful and conscious

disregard of their rights and/or subjected them to cruel and unjust hardship in conscious disregard of their rights.

33. Defendant's conduct caused Plaintiffs substantial emotional distress.

34. Defendant's conduct constituted an intentional misrepresentation, deceit or concealment of material facts known to Defendant with the intention of depriving Plaintiffs of property, legal rights and/or of causing other injury.

35. Defendant's conduct constitutes malice, oppression or fraud under California Civil Code § 3294, entitling Plaintiffs to punitive damages in an amount appropriate to punish or set an example of Defendant and deter future similar conduct.

## PRAYER FOR RELIEF

Plaintiffs request that the Court enter judgment as follows:

### First Cause of Action – Breach of Contract

1. Damages under the Policy, plus interest, including prejudgment interest and other economic and consequential damages, in an amount to be determined according to proof at the time of trial;
2. Costs of suit incurred herein; and
3. Other relief as the Court deems just and proper.

### Second Cause of Action - Breach of the Duty of Good Faith and Fair Dealing

4. Damages for wrongful denial and failure to provide benefits under the policy, plus interest, including prejudgment interest, in a sum to be determined at the time of trial;

5. Attorney's fees, witness fees and costs of litigation incurred by Plaintiffs to obtain policy benefits in an amount to be determined at trial;

6. Economic and consequential damages arising out of the Defendant's unreasonable failure to provide benefits under the Policy;

7. General damages for mental and emotional distress;

8. Punitive and exemplary damages in an amount appropriate to punish or set an example of Defendant;

9. Costs of suit incurred herein; and

10. Other relief as the Court deems just and proper.

Dated: March 28, 2025

EVANGELINE FISHER GROSSMAN LAW

By: ______________________
EVANGELINE FISHER GROSSMAN
TONNA K. FAXON
Attorneys for Plaintiffs

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

Dated: March 28, 2025

EVANGELINE FISHER GROSSMAN LAW

By: ______________________
EVANGELINE FISHER GROSSMAN
TONNA K. FAXON
Attorneys for Plaintiffs